Edward Stevens and Leona Stevens v. Commissioner.
Stevens v. Commissioner
Docket No. 53934.
United States Tax Court
T.C. Memo 1955-333; 1955 Tax Ct. Memo LEXIS 5; 14 T.C.M. (CCH) 1318; T.C.M. (RIA) 55333; December 28, 1955
Joseph Leo McGroary, Esq., for the petitioners. William Schwerdtfeger, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined a deficiency in the income tax of petitioners for the calendar year 1951 in the amount of $2,147.50 and additions to tax under section 294(d)(1)(A) and (d)(2) of the Internal Revenue Code of 1939 in the amount of $3,097.50. Petitioners claim an overpayment in tax. The sole issue for our decision due to petitioners' abandonment of other issues raised in the pleadings is whether petitioners received during that year as a dividend distribution from Stevens Tile and Marble Co., Inc., the sum of $37,317.25. Findings of Fact The stipulated facts are so found. Petitioners are husband and wife, residents of the District of Columbia. *6 They filed a joint income tax return for the calendar year 1951 with the collector of internal revenue at Baltimore, Maryland. On the return filed, petitioners included in income an item in the amount of $37,317.25 designated as dividends from the Stevens Tile and Marble Co., Inc., hereinafter sometimes designated the corporation. The corporation was formed under the laws of the District of Columbia on April 16, 1940. Petitioner Edward Stevens was, during the taxable year, its president, treasurer, and a member of its board of trustees. Petitioner Leona Stevens was its secretary and a member of its board of trustees. The authorized capital stock of the corporation from its inception was 10 shares. On January 1, 1951, Edward was the owner of 5 shares thereof which he held throughout 1951. On October 5, 1950, Edward C. Stevens, son of the petitioners, died testate, and at the time of his death was owner of the other 5 shares of stock of the corporation. Decedent nominated his widow, Ann A. Stevens, executrix of his estate, and in his will bequeathed 4 of the 5 shares of the corporation's stock to her and one share to his mother and father, the petitioners, jointly. At a regular meeting *7 of the stockholders of the corporation, held on December 22, 1950, Edward was authorized and directed, on behalf of the corporation, to purchase from Ann 4 shares of its stock, said shares to be cancelled and not reissued. On July 16, 1951, Edward drew his personal check to the order of Ann in the sum of $10,622.08; she endorsed it as executrix of the estate of her deceased husband, and deposited it in a bank account which she maintained in the name of the estate. On the following day, July 17, 1951, Ann endorsed 4 of the 5 shares over to Edward. On the estate tax return filed on November 1, 1951, by Ann for the estate of her deceased husband, this stock was valued at $2,665.52 per share. She filed no Federal fiduciary return of income for the estate. On her personal income tax return for 1951, she reported no gain or loss from the sale of the stock of the corporation. On or about October 29, 1951, Ann endorsed one of the 5 shares of stock to petitioners in accordance with her late husband's will. A new certificate for that share of stock was, on the same day, issued by the corporation to petitioners. A friendly relationship prevailed between petitioners and Ann throughout the *8 transactions here involved. It was petitioners' desire that she should receive as soon as practicable such funds from the corporation's business as were representative of the 4 shares of stock willed to her by her husband. To that end, a meeting of the interested parties was held on May 21, 1951, at which meeting Ann, George L. Quinn, an attorney, and Jack Pearson, an accountant, were present. Quinn had for some time represented the corporation and was also retained as attorney by Ann in her capacity as executrix of her deceased husband's estate. Pearson had acted as bookkeeper or accountant of the corporation for 5 to 7 years and had kept physical possession of the corporate books during that time. He also prepared the corporation income tax returns, together with the returns of petitioners. Petitioners had requested that Pearson be prepared at the meeting to furnish information as to the value of the stock of the corporation, but at the meeting he indicated that he had been unable to comply and assured all present that such information would later be forthcoming. Making the statement that Ann would receive her share of the business by way of a dividend, he presented three checks *9 on the corporation's checking account for the signature of petitioner Edward Stevens. Quinn immediately questioned the propriety of and authority for the paying of a dividend, but Edward signed the checks and delivered one to Ann, drawn to her as payee, in the amount of $24,878.17, which she deposited in a special bank account as executrix. One check in the amount of $6,219.54 was drawn to Edward and Leona Stevens and a check in the amount of $31,097.71 was drawn to Edward Stevens. After being left in the office of the corporation for a time, the latter two checks were endorsed by the payees and deposited in the corporate bank account on which they had been drawn. No formal corporate resolution authorizing the payment of dividends was adopted at this meeting. However, the stubs of the referred to checks each bore the notation "Div." In November 1951, an agent of respondent investigated the corporate records for 1949 and 1950 with respect, among other things, to the liability of the corporation for surtax under section 102 of the 1939 Code for unreasonably accumulating its profits. During his investigation, the cancelled checks above referred to were exhibited to him. As a result *10 of the investigation, no action was taken against the corporation under section 102. At the time petitioners deposited the checks drawn on May 21, 1951, there was also deposited Edward's personal check to the order of the corporation in the amount of $16,021.85. On June 1, 1951, the amount of $53,339.10, the total of the three checks, was credited to the regular account of the corporation and, after another deposit was made and two unrelated checks cleared the account that day, the balance stood at $65,709.49. The two checks in the amounts of $31,097.71 and $6,219.54 were charged to the account on June 4, 1951, leaving a balance at the end of that day in the amount of $24,632.70. On June 8, 1951, after several other checks cleared the account and after several deposits were made thereto, the balance rose to $47,717.22. During the remainder of 1951 there was a balance in the regular account of sufficient size to cash both these checks, i.e., a balance greater than $37,317.25, for the following periods: June 8 to June 19 June 19 to June 22 July 17 to July 23 August 15 to August 16 In addition to the regular account which the corporation maintained at the Second National Bank, *11 it had three other accounts. At the same bank it maintained a "special" account which was used largely for the deposit of amounts withheld from the wages of employees for income and social security tax purposes. On May 21, 1951, the balance in this account was $1,663.21. On June 1 and June 4 the balance was $2,367.56, and on June 8 it was $2,600.22. The third account, maintained by the corporation, was at the National Metropolitan Bank, Washington, D.C. This account was inactive during the months of January to July, 1951, with the balance remaining constant at $3,699.10. In August, activity began on an increasing scale to the end of the year. The highest balance therein was achieved on October 12 when the amount stood at $27,576.46. The fourth account was a savings account in an undesignated depository. As to this account, the record is silent except that it shows that at the beginning of 1951 the balance therein was $12,362.25 and that by the end of the year the account had been closed. In 1950, Edward Stevens caused the corporation to pay for him the following amounts: Feb. 17 Deposit on a lot
$ 5,000.00
Mar. 1 Payment on automobile
1,016.45
Apr. 4 Payment to Dist. Title Ins.
Co.
31,479.00
June 10 Payment to Dist. Title Ins.
Co.
14.20
Sept. 13 Real Estate tax
360.10
*12 During the same year, he paid the following amount to the corporation: December 31 Rent
$4,000
During 1951, Edward Stevens caused the corporation to pay for him the following amounts: (date not given) Real Estate tax
$360.10
(dates not given) Other drawings
485.87 During the same year, he paid the following amounts to or for the corporation: May 21
$16,021.85
September 17
6,948.13
(date not given) Rent
950.00
(date not given) Rent
6,000.00
July 17 Purchase of stock
10,662.08
On March 17, 1952, the corporation paid Federal income tax of petitioners for 1951 in the amount of $18,502.48. The original 1951 income tax return of the corporation shows a cash dividend distribution for that taxable year of $62,195.42. Petitioners' individual income tax returns for 1951 show receipt of dividends from the corporation in the amount of $37,317.25. After the original 1951 return was filed on March 19, 1952, the corporation discharged Pearson who had handled its accounting and certain other corporate matters and retained Frederick Kitchener and another certified public accountant, Samuel J. Smith. Kitchener and Smith were hired *13 to survey the company's affairs for 1951 as well as reorganize its current bookkeeping. In making their survey, they decided that the checks of May 21, 1951, to the shareholders did not constitute dividends. They filed an amended corporate return on September 22, 1952, which did not show the payment of any dividends during the taxable year. In that return, $35,140.25 of the total of $35,540.25 paid to Ann during 1951 was treated as "Premium on Treasury Stock." On the same day that the amended corporate return was filed, petitioners filed a claim for refund on the ground that the $37,317.25 in the form of the two checks received by them did not constitute income. This claim was prepared by Kitchener and filed at his suggestion. Smith set up new company books for 1951 in which he reflected the $37,317.25 as a simultaneous debit and credit to the personal account of petitioner Edward Stevens. The corporation had accumulated earnings and profits during 1951 in excess of $62,195.42. Throughout that year not only did its net worth exceed such sum, but its current assets alone, less total liabilities, exceeded it. The check of Edward Stevens in the amount of $10,662.08, dated July 16, 1951, was *14 in full and complete satisfaction of the agreement to purchase 4 shares of the Stevens Title and Marble Co. stock from Ann A. Stevens. The corporate check of $24,878.17, dated May 21, 1951, to Ann A. Stevens was not, in whole or in part, in satisfaction of the agreement. Opinion The sole question before us is whether by the receipt of the two checks in the amounts of $6,219.54 and $31,097.71, respectively, and totaling $37,317.25 the petitioners during 1951 received dividends in the latter amount from Stevens Tile and Marble Co. The respondent has determined that they did receive dividends from that source in such amount. The petitioners contend that they did not. The petitioners therefore had the burden of showing that the respondent's determination was erroneous. The petitioners have submitted considerable testimony respecting the circumstances surrounding the issuance on May 21, 1951, of the two checks to them and the check to Ann and have made a number of arguments with respect to such testimony and the treatment to be accorded such checks in the light of the evidence relating thereto All of the evidence respecting the checks and the arguments respecting them have been carefully *15 considered and, in our opinion, the petitioners have failed to discharge their burden. We discuss herein the principal contentions of petitioners. The petitioners make no contention that the formal declaration of a dividend is a prerequisite to its taxability as such, nor do they contend that the corporation's earnings and profits as contemplated by section 115(a) of the 1939 Code were insufficient during 1951 to pay dividends in the total amount of the checks issued to them and Ann on May 21, 1951. They do contend that the payment of a dividend was not intended by the issuance of the checks; that they, the petitioners, knew the corporation did not have funds to pay their checks when they were issued, that the checks could not have been cashed by petitioners and that they therefore received nothing by depositing the checks; and further that to constitute a dividend includible in their gross income for 1951, it was essential that during that year the amounts of their two checks be "unqualifiedly subject to their demands" and that such was not the situation during the year. Quinn, the corporation's attorney, usually prepared minutes of the corporate meetings, but no minutes were *16 prepared of the meeting on May 21, 1951. Quinn's testimony and that of other witnesses is to the effect that the meeting was principally concerned with arranging for Ann to obtain from the corporation the interest therein represented by the 4 shares of stock bequeathed to her by her husband. That action in such respect does not appear to have been the sole action taken at the meeting is shown by the fact that at that meeting not only did Edward sign and deliver a corporate check drawn to Ann but also signed two other corporate checks, one drawn to himself and one drawn to himself and wife. The amounts of the three checks were proportionate to the stock interests of parties, namely, the 5 shares of Edward, 4 of Ann and one of Edward and wife. If the checks drawn to Edward and to himself and wife were for any purpose other than a distribution to them of earnings and profits of the corporation, we are unable to find any evidence of it in the record. The evidence shows that on May 21, 1951, the date on which all three checks were signed by Edward, the corporation's regular checking account at the Second National Bank had a balance therein of $41,530.29 and that its account with National *17 Metropolitan had a balance of $3,699.10, or a total for the two accounts of $45,229.39. The evidence further shows that at the beginning of 1951 the corporation had a savings account with an undesignated depository which had a balance therein of $12,362.25. The record is silent as to the balance in that account thereafter during 1951 except that by the end of the year the account had been closed. Whether deposits were made in this account during 1951, and, if so, when they were made and the amounts thereof or what time in 1951 the account was closed and the amount withdrawn as that time or previously are matters as to which the petitioners have left us uninformed. It may well be that the balance in this account on May 21, 1951, plus the $45,229.39 mentioned above, was ample to make payment of the checks issued to petitioners and Ann and all other outstanding checks of the corporation on that date. If such were the situation, it could not be said that the corporation did not have funds to pay the checks or that the checks could not have been cashed if petitioners had desired to do so. The record does not disclose that at the time Edward signed the three checks, or at any other time, *18 there was any agreement or understanding between him and his wife and Ann or the corporation which limited or restricted the time for cashing the checks or otherwise making demand on the corporation for payment of the amounts thereof. In view of this and since it does not appear that the corporation was without funds with which it could have paid the amounts of the two checks of petitioners, either at the time issued or at other times thereafter, in 1951, we can not find that the amounts of petitioners' checks were not unqualifiedly subject to their demands. The petitioners' endorsements of their checks and the deposit thereof in the corporation's bank account does not aid them under the circumstances presented here. The repayment by a taxpayer to the paying corporation of the amount of a dividend which had been paid earlier in the year does not relieve him of the tax thereon, even though the dividend had been paid as a result of the erroneous advice of an accountant. Estate of Lloyd E. Crellin, 17 T.C. 781, affd 203 Fed. (2d) 812, certiorari denied 346 U.S. 873. Decision will be entered for the respondent.